# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | |
|---|---|
| GERALD T. JOHNSON and SERENITY ) <br> MEMORIAL FUNERAL AND ) <br> CREMATION SERVICE, LLC, a ) <br> Missouri Limited Liability Company ) <br> ) <br> Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> STATE BOARD OF EMBALMERS ) <br> AND FUNERAL DIRECTORS ) <br> ) <br> and ) <br> ) <br> NICK MCBROOM, ) <br> in his official capacity ) <br> ) <br> and ) <br> ) <br> PATTY FAENGER, ) <br> in her official and individual capacities ) <br> ) <br> Defendants. ) | No.: 4:25-cv-00704 <br><br> JURY TRIAL DEMANDED |

## COMPLAINT

Plaintiffs Gerald T. Johnson ("Mr. Johnson") and Serenity Memorial Funeral and Cremation Service, LLC ("Serenity") (collectively, "Plaintiffs"), by and through their undersigned counsel, file this Complaint against Defendants Nick McBroom ("Defendant McBroom"), Patty Faenger ("Defendant Faenger") and the State Board of Embalmers and Funeral Directors (the "Board") (collectively "Defendants") for (1) violating the Fourteenth Amendment to the United States Constitution's rights to due process and equal prosecution; (2) violating the Equal Rights and Due Process Clause of the State of Missouri's Constitution; and (3) malicious prosecution of claims against Plaintiffs. In support of this Complaint, Plaintiffs state as follows:

## PARTIES

1. Mr. Johnson is the owner and operator of Serenity, a limited liability company registered with the Secretary of State and holding a funeral establishment license issued by the State Board of Embalmers and Funeral Directors. Mr. Johnson is a licensed embalmer and funeral director with over twenty-five years of professional experience in the funeral services industry.

2. Serenity, located at 1905 Union Boulevard, St. Louis, Missouri is both a "Function A" establishment for embalming services and a "Function C" establishment for funeral services, as set forth in 20 CSR 2120-2.070. Established in 2010, Serenity provides affordable, quality funeral and cremation services to the greater metropolitan St. Louis area and surrounding communities.

3. The Board is an agency of the State of Missouri created and established by R.S.Mo. § 333.151 for the purpose of overseeing the practice of embalming, funeral directing, and funeral home licensing as defined in R.S.Mo. §§ 333 and 436.

4. Defendant Faenger is (or was at all times relevant to this Complaint) the Executive Director of the Board.

5. Defendant McBroom is (or was at all times relevant to this Complaint) a senior investigator for the State of Missouri's Department of Commerce and Insurance, Division of Professional Registration.

6. At all times relevant herein, Defendants acted under color of the laws, statutes, ordinances, and regulations of state law.

## JURISDICTION AND VENUE

7. This Court has federal question jurisdiction and supplemental jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1367 because Plaintiffs' claims arise under the United States Constitution, brought pursuant to 42 U.S.C. §1983, and under laws of the United

States. The state law claims are so closely related to the federal law claim as to form the same case or controversy under Article III of the United States Constitution.

8. Venue is proper in the United States District Court for the Eastern District of Missouri pursuant to 28 U.S.C. § 1391. The events and omissions giving rise to this Complaint occurred within this jurisdictional district.

9. On information and belief, Defendant McBroom is a citizen and resident of the State of Missouri. This Court has jurisdiction over the claims asserted against him pursuant to 28 U.S.C. § 1331, because those claims asserted are pursuant to 42 U.S.C. §1983.

10. On information and belief, Defendant Faenger is a citizen and resident of the State of Missouri. This Court has jurisdiction over the claims asserted against her pursuant to 28 U.S.C. § 1331, because the claim is asserted are pursuant to 42 U.S.C. §1983. Defendant Faenger is also being sued in her individual capacity because she caused the harms Plaintiffs allege in their claim against Defendant Faenger.

11. Plaintiffs demand a trial by jury pursuant to Fed. R. Civ. P. 38(b).

## FACTUAL AND PROCEDURAL BACKGROUND

**A. Serenity and Mr. Johnson had a Reputation for Stellar and Compassionate Funeral Services.**

12. As one of three funeral chapels owned and operated by Mr. Johnson, Serenity is a well-established and highly regarded establishment that has served the needs of thousands of bereaved families in the greater metropolitan St. Louis community for the past twenty years. Serenity has a professional staff of one general manager, four licensed funeral directors, and fifteen part-time funeral workers. Serenity prides itself on offering elegant yet affordable services to families in their greatest time of need.

13. Reputation is the bedrock of the funeral service business. In the most difficult times of their lives, people only turn to funeral homes they trust to treat them and the remains of their loved ones with the greatest degree of care and respect.

14. For more than twenty years, Serenity and Mr. Johnson have had an exceptional reputation for treating their customers and the remains of their customer's loved ones with the greatest degree of dignity, care, and respect.

15. Mr. Johnson is often called upon by his peers around the country to perform complex traumatic embalming restoration as well as to coordinate shipping arrangements of remains. Additionally, Mr. Johnson is known for his philanthropic engagement in the communities he serves, most notably providing free funeral services for infants and small children and ensuring that indigent, underinsured, and uninsured individuals receive a respectable and dignified final disposition. Mr. Johnson has also served as a board member for several non-profit organizations, including the Illinois Funeral Directors Association (Region 6 Executive Director), Project Compassion, HealthVisions Midwest, the Southern Illinois Regional Wellness Center, and Peoples Health Clinic – St. Louis, MO.

16. Mr. Johnson has consistently demonstrated a rational, open-minded, compliant, and cooperative demeanor in all prior inspections and engagements with the Board. He has shown a commendable willingness to engage in constructive dialogue, accept feedback, and implement necessary adjustments and improvements.

      **B.    Defendants Faenger and McBroom Conspired to Destroy Serenity's Business.**

17. The reputation which Serenity worked so hard to build was virtually shattered when Defendants Faenger and McBroom, acting under color of their authority as Executive Director of the Board and Investigator, caused salacious facts and false conclusions to be published in a public forum in order to create the impression that Serenity's operations were so reckless, filthy and

depraved that it caused an immediate and emergent danger to the public, all while intentionally withholding inspection reports from Serenity in contravention of their regular practice, misleading a newly appointed Board about the gravity of the alleged violations, and denying Serenity the right to an administrative hearing before causing the salacious acts and false conclusion about Serenity to be published.

> C. **Defendant McBroom Manufactured an "Emergency" at Serenity in March 2023.**

18. The Board conducts annual inspections of Serenity. In that vein, the Board conducted an inspection of Serenity in June 2022 (the "Annual Inspection").

19. On March 7, 2023, the Board provided written notice to Mr. Johnson that Serenity had passed its Annual Inspection and was in compliance with Missouri law. *See* Ex. 1.

20. One week after receiving notice that it passed its Annual Inspection (March 14, 2023), Defendant McBroom conducted an unannounced inspection of Serenity ("March Unannounced Inspection"). Defendant McBroom followed the March Unannounced Inspection with unannounced inspections on April 20, 2023 ("First Unannounced April Inspection") and April 26, 2023 ("Second Unannounced April Inspection") (collectively, the "Unannounced Inspections").

21. Defendant McBroom created Inspection Reports immediately following each of the Unannounced Inspections.

22. On April 20, 2023, Defendant Faenger filed a "complaint" against Serenity with the Board (the "April Complaint").

23. Immediately following the March Unannounced Inspection, the April Complaint, and the First Unannounced April Inspection, Mr. Johnson requested copies of the respective Inspection Reports and April Complaint from Defendant McBroom.

24. Despite Mr. Johnson's requests, Defendants refused to provide Mr. Johnson with copies of the Inspection Reports from the Unannounced Inspections and the April Complaint. Defendant McBroom also refused to share details with Mr. Johnson regarding any alleged violations he discovered during the Unannounced Inspections.

### D. Missouri's Regular Process for Handling Administrative Complaints Ensures a Private Investigation, Discovery and a Full Administrative Hearing.

25. In Missouri, the process for investigating a complaint against a funeral home is handled as follows:

   i) Complaint is made and "logged in a book and/or database maintained by the board for that purpose";

   ii) The Board will consider/investigate the Complaint and decide whether to dismiss the Complaint or refer the same to the Administrative Hearing Commission;

   iii) After discovery, the Administrative Hearing Commission will conduct a hearing (with representatives from Serenity present) to determine whether there are grounds to discipline the licensee based on the complaint;

   iv) The licensee may appeal the Administrative Hearing Commission's decision with the appropriate court of appeals.

*See* 20 CSR 2120-2.110(4) – (7) (hereinafter, the "Administrative Review Process").

26. Pursuant to 20 CSR 2120-2.110(4) and (7):

   i) The "logbook and/or database" containing the complaint submitted to the board "shall be a closed record of the board"; and

   ii) "Both complaint and any information obtained as a result of the investigation shall be considered a closed record and shall not be available to the general public. However, a copy of the complaint and any attachments shall be provided to any licensee who is the subject of that complaint, or his/her legal counsel, upon written request to the board."

(hereinafter, the "Privacy Provisions").

     **E. Defendants Misled the Board about an "Emergency" at Serenity.**

  27. On information and belief, Defendant Faenger was aware that the terms of the newly formed Board began on April 6, 2023 (two members), April 20, 2023 (one member), April 27, 2023 (one member), and June 1, 2023 (one member).

  28. On information and belief, Defendant Faenger was aware that when the newly formed Board considered the April Complaint she filed on April 20, 2023, this new Board had not yet been fully and sufficiently trained about the details of its oversight responsibilities and the standard process for handling complaints.

  29. On information and belief, Defendant Faenger intentionally, methodically and maliciously waited until the time just after the Board was sworn in, but before the Board was fully and sufficiently trained, to present the April Complaint to the Board.

  30. On information and belief, Defendants Faenger and McBroom intentionally and maliciously exaggerated the importance of activities which are normal in the funeral services industry, like storing embalmed bodies in a non-refrigerated storage space and embalming bodies using an open embalming process, in an effort to mislead the Board into believing Serenity's operations caused an immediate danger to the health and safety of the public such that it was necessary to bypass Missouri's Administrative Hearing Process and pursue an immediate (and permanent) suspension of Serenity's license to operate a funeral home.

    **F. Defendants Intentionally and Maliciously Bypassed the Administrative Review Process to Create the Public Impression that Serenity's Business is so Filthy and Disorganized that it Caused an Immediate Danger to the Public.**

  31. Instead of providing Mr. Johnson with a copy of the Inspection Reports from the Unannounced Inspections and/or the April Complaint, on May 22, 2023 at 9:37am, Defendant Faenger caused a motion for a temporary restraining order and complaint to be publicly filed

against Serenity in the 19th Judicial Circuit of Cole County Missouri ("Motion for Temporary Restraining Order").

32. The Motion for Temporary Restraining Order publicly alleges that Serenity:

   a. failed to properly care for human dead bodies by not timely nor properly embalming;
   b. had insufficient capacity in its cooling unit;
   c. had dead bodies in a transport van parked outside the funeral home; and
   d. had clogged embalming sinks

(collectively the "Salacious Act Allegations"), which presented "a substantial probability of serious danger to the health, safety and welfare of any resident of [Missouri] or any client or customer of [Serenity]". *See Ex. 2.*

33. On May 22, 2023, at 10:00am (approximately twenty minutes after filing the Motion for Temporary Restraining Order), Defendant Faenger, along with Kevin Lager, Dennis Campbell and Clair Hoffman (all affiliated with the Board), arrived at Serenity to conduct a fourth unannounced inspection of Serenity (the "Unannounced May Inspection").

34. Much like the previous Unannounced Inspections, Mr. Johnson (unaware that the Motion for Temporary Restraining Order had been filed) requested a copy of the Inspection Report produced from the Unannounced May Inspection, but Defendants refused to provide him with a copy.

35. On May 24, 2023, two days after the Motion for Temporary Restraining Order was filed against Serenity, the Board first provided Mr. Johnson with copies of the Inspection Reports from the Unannounced March, April and May Inspections as well as the list of alleged violations from the Unannounced March, April and May Inspections.

36. On May 25, 2023, the St. Louis Post-Dispatch newspaper printed a front-page article about Serenity entitled: "*Mishandled Bodies, Biohazard Cited in Lawsuit To Close Funeral*

*Home*" (the "Headline") and the article repeated many of the Salacious Act Allegations (hereinafter, the "Front-Page Article").

37. Immediately after the Front-Page Article was published, Serenity received phone calls from several of its long-term clients, including nursing home facilities and families with whom Serenity had a long-term relationship, cancelling their business based exclusively on the allegations in the Motion for Temporary Restraining Order. Furthermore, since the Front-Page Article was published several parties with whom Serenity had a long-term relationship have expressed concerns about using Serenity based on the allegations in the Front-Page Article.

38. A hearing for the Board's Motion for Temporary Restraining Order against Serenity was held on June 9, 2023.

39. Despite Privacy Provisions and the Salacious Act Allegations, Defendant Faenger admitted under oath that:

  a. it is standard procedure for the Board to give licensees a copy of their Inspection Reports after an inspection has been conducted of their facilities;

  b. the Board refused to give Mr. Johnson copies of the Inspection Reports from the Unannounced Inspections;

  c. it is standard practice for a licensee to be provided with written notice of any deficiencies discovered during an inspection;

  d. it is standard practice for a licensee to be provided with an opportunity to cure any deficiencies identified during an inspection;

  e. the Board did not give Mr. Johnson a copy of the Inspection Reports from the Unannounced Inspections until after filling the Motion for Temporary Restraining Order;

  f. the Board did not give Mr. Johnson an opportunity to cure any of the alleged deficiencies identified in the Inspection Reports from the Unannounced Inspections before the Motion for Temporary Restraining Order was filed and the Front-Page Article was published;

  g. Defendant Faenger did not have direct, first-hand knowledge of the alleged deficiencies found during the Unannounced March and April Inspections; and

      h.     Defendant Faenger authorized the Motion for Temporary Restraining Order to be filed

(collectively, "Defendant Faenger's Admissions").

40.    Despite the Privacy Provisions and the Salacious Act Allegations, Defendant McBroom admitted under oath that:

    a.     he never provided Mr. Johnson a written notice of any deficiencies discovered in the Unannounced March and/or April Inspections;

    b.     although he cited Serenity for not timely embalming bodies, he was not sure if Serenity actually failed to embalm bodies within the twenty-four hours required by law;

    c.     although he cited Serenity for having insufficient capacity in its cooling unit, such act was not a violation of state regulations;

    d.     although he cited Serenity for having decedents in a transport van, he did not confirm how long the bodies may have been in the van; and

    e.     although he cited Serenity for having clogged embalming drain sinks, he could not confirm whether the embalming sinks were, in fact, clogged

(collectively, "Defendant McBroom's Admissions").

41.    In short, none of the allegations on which the Board based its Motion for Temporary Restraining Order were violations of law that presented "a substantial probability of serious danger to the health, safety and welfare of any resident of [Missouri] or any client or customer of [Serenity]". Moreover, there was no "emergency" warranting the public disclosure of the Salacious Act Allegations before they could be addressed by Serenity or the bypassing of the Administrative Review Process.

42.    After the hearing, the Court denied Motion for Temporary Restraining Order, specifically finding that the Board produced <u>no</u> <u>evidence</u> that:

    a.     bodies at Serenity were not embalmed in a timely manner;

    b.     bodies were improperly embalmed;

    c.    Serenity's cooling unit lacked capacity;

    d.    bodies were improperly stored;

    e.    bodies were improperly stored in a transport van;

    f.    the embalming sinks were clogged; or

    g.    any alleged "violation" presented "a substantial probability of serious danger to the health, safety and welfare of any resident of [Missouri] or any client or customer of [Serenity]"

(the "Court's Findings"). *See* Ex. 3. In other words, there was no factual basis for the Board's claim that any of the Salacious Act Allegations created an "emergency" or even an "immediate" threat to the safety of the public.

43. On September 16, 2024, the Board voluntarily dismissed its Complaint seeking to enjoin Serenity from operating as a funeral home before Serenity had an opportunity to seek Rule 11 sanctions or a counterclaim.

## COUNT I
### Violation of the Due Process Clause of the Fourteenth Amendment to the U.S. Constitution 42 U.S.C. § 1983

44. Plaintiffs incorporate by reference all of the preceding paragraphs of this Complaint as if fully set forth herein.

45. The Fourteenth Amendment to the United States Constitution provides that no state shall "deprive any person of life, liberty, or property, without due process of law."

46. Missouri law (20 CSR 2120 – 2.110) gives the Board the authority to inspect and otherwise regulate the operation of funeral homes in Missouri.

47. As Executive Director and Inspector of the Board, Defendants were employees of the State of Missouri who are vested with the authority to inspect and prosecute violations of the

regulations governing the operation of funeral homes in Missouri at all times relevant to the acts alleged in this Complaint.

48. As such, Defendants were "acting under color of state law" when they engaged in the activities described in this Complaint.

49. More specifically, Defendants demonstrated an intentional, outrageous, and wanton disregard for Plaintiffs' constitutional rights in an effort to destroy Serenity's business and commercial reputation without the due process of law enshrined in 20 CSR 2120, Chapter 2, when they:

    a. intentionally planned the Unannounced Inspections to take advantage of the newly appointed and insufficiently trained Board;

    b. misrepresented the gravity of Serenity's alleged violations to the Board to convince the Board to authorize bypassing the Administrative Hearing Process in Serenity's case;

    c. fabricated an "emergency" to the health and safety of the public as a rouse to publish the Salacious Act Allegations and destroy Serenity's business and business reputation without the benefit of an administrative hearing and in contravention of Serenity's right to access to the Inspection Reports and a private investigation as memorialized in the Privacy Provisions; and

    d. withdrew its state court Complaint before Serenity had an opportunity to seek Rule 11 sanctions or to counterclaim.

50. As a direct and proximate result of Defendants' above-described actions, Plaintiffs: a) have been stigmatized, b) suffered (and continue to suffer) immeasurable harm to their personal and professional reputations, c) lost revenue, d) experienced significantly diminished employment opportunities, e) experienced shock, outrage, public humiliation, and f) have lost the ability to secure future business from important revenue sources.

51. Accordingly, Defendants are liable to Plaintiffs for violations of the U.S. Constitution, and Defendant Faenger is liable in her personal capacity, for all damages arising out of these violations.

WHEREFORE, Plaintiffs prays judgment against Defendants under Count I of this Complaint for actual damages in an amount to be determined at trial; punitive damages against Defendant Faenger as may be appropriate; reasonable attorney fees and costs pursuant to 42 USC § 1988 and any other applicable provisions of law; and all other additional relief as the Court deems just and proper.

## COUNT II
### Violation of the Due Process Clause of the Missouri Constitution

52. Plaintiffs incorporate by reference all preceding paragraphs of this Complaint as though fully set forth herein.

53. The Missouri Constitution states:

> [T]hat all persons have a natural right to life, liberty, and the pursuit of happiness and the enjoyment of the gains of their own industry; that all persons are created equal and are entitled to equal rights and opportunity under the law; that to give security to these things is the principal office of government, and that when government does not confer this security, it fails in its chief design. Mo. Const. Art. I, § 2.

54. The Missouri Constitution further states, "That no person shall be deprived of life, liberty or property without due process of law." Mo. Const. Art. I § 10.

55. For the reasons stated under Count I, Defendants deprived Plaintiffs of various property and liberty interests (described more fully in Count I) without due process of law.

56. Accordingly, Defendants are liable to Plaintiffs for violating the Missouri Constitution, and Defendant Faenger is liable in her individual capacity, for all damages arising out of these violations.

WHEREFORE, Plaintiffs pray judgment against Defendants under Count II of this Complaint for actual damages in an amount to be determined at trial; punitive damages against Defendant Faenger as may be appropriate; reasonable attorney fees and costs pursuant to 42 USC

§ 1988 and any other applicable provisions of law; and all other additional relief as the Court deems just and proper.

### COUNT III
### Malicious Prosecution ("Malice in Law")
*Against Defendant Faenger*

57. Plaintiffs incorporate by reference all preceding paragraphs of this Complaint as though full set forth therein.

58. Plaintiffs allege that Defendant Faenger, in her personal capacity, subjected Plaintiffs to malicious prosecution.

59. On May 22, 2023, the Board, acting at the direction of Defendant Faenger, filed a lawsuit against Serenity seeking to restrain and enjoin Plaintiffs from operating any business or performing any services related to the care or handling of human bodies, and to prohibit Plaintiffs from engaging in the practice of funeral directing, embalming, and/or any other service regulated under relevant state statutes.

60. Defendant Faenger instigated the Board's lawsuit against Serenity.

61. After the circuit court heard written and oral arguments from the Board and Plaintiffs, and reviewed the evidence presented at the hearing for the Motion for Temporary Restraining Order, the circuit court terminated the proceedings in Serenity's favor.

62. In terminating the Motion for Temporary Restraining Order in Serenity's favor, the circuit court held that the Board lacked probable cause to temporarily enjoin Serenity from conducting business insofar as the Board failed to satisfy its burden to prove that Serenity presented a substantial probability of serious danger to the health, safety or welfare of the residents of the State of Missouri.

63. Upon information and belief, Defendant Faenger acted with improper motive by surreptitiously filing injunctive relief against Serenity while deliberately and knowingly preventing Plaintiffs from receiving fair notice and an opportunity to cure prior to such filing.

64. Upon information and belief, Defendant Faenger intentionally and maliciously filed the temporary restraining order and preliminary injunction against Serenity and continued without the honest belief that such action was lawful when filed.

65. During the sixty-day time period from the time of the Unannounced March Inspection until the filing of the Motion for Temporary Restraining Order, Defendant Faenger never communicated with Plaintiff and never sought to obtain direct, first-hand knowledge of the conditions of Serenity pursuant to the Unannounced Inspections.

66. Defendant Faenger filed the Motion for Temporary Restraining Order *before* obtaining direct, first-hand knowledge of the Salacious Act Allegations.

67. Defendant Faenger admitted that the first contact she had with Plaintiffs was when the Board filed a lawsuit to temporarily and permanently close Serenity.

68. Defendant Faenger showed an intentional, outrageous, and wanton disregard for Plaintiffs' constitutional rights by excommunicating Plaintiffs from any and all constitutional rights until she could compile enough allegations—irrespective of the truthfulness therein—to file legal action for the dissolution Serenity without first affording Plaintiffs any meaningful due process, including, but not limited to, written notice and the opportunity to cure.

69. The circuit court unequivocally determined that the Board had no probable cause to file a temporary injunction against Serenity.

70. As a direct and proximate result of Defendant Faenger's instigation and/or continuation of the aforesaid injunctive action against Serenity, Plaintiffs sustained the following injuries and damages: Plaintiffs continue to incur attorney's fees to defend the case brought against

them; they were embarrassed and publicly humiliated by the Board's disclosure of the lawsuit to the St. Louis Post-Dispatch newspaper; and Plaintiffs have lost, and are still losing, an incalculable amount of revenue due to the diminished business opportunities resulting from the negative and false publicity of Defendant Faenger's lawsuit against Serenity.

71. The conduct of Defendant Faenger was reckless and callously indifferent to Plaintiffs' constitutionally protected rights, malicious and wanton with respect to those rights, and an award of punitive damages is warranted and necessary to punish Defendant Faenger in her individual capacity to deter her and others from the same or similar transgressions in the future.

WHEREFORE, Plaintiffs pray for judgment against Defendant Faenger under Count III of this Complaint, seeking monetary damages against her for compensatory damages in an amount that is fair and reasonable for the public humiliation, stigma, and emotional pain and suffering as a result of her actions; for punitive damages against Defendant Faenger in her individual capacity; attorney's fees in the amount of $70,000 to defend the underlying case brought against him; the cost of this action, to include but not necessarily be limited to reasonable attorney's fees; and for such other and further relief as the Court deems fair and appropriate under the circumstances.

Dated:  May 15, 2025

Respectfully submitted,

QUARLES & BRADY, LLP

By: <u>/s/ L. Michelle Lewis</u>
Steven V. Hunter (*Pro Hac Vice pending*)
300 North LaSalle Street, Suite 4000
Chicago, IL  60654
(312) 715-5087 – Telephone
(312) 715-5155 – Facsimile
Steven.Hunter@quarles.com

L. Michelle Lewis #74335MO
8235 Forsyth Blvd., 10th Floor
Clayton, Missouri 63105
(314) 696-5113 – Telephone
(314) 696-5199 – Facsimile
Michelle.Lewis@quarles.com

ATTORNEYS FOR PLAINTIFFS