**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| GERALD T. JOHNSON, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>PATTY FAENGER,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | No. 4:25-CV-704 HEA |

**<u>PLAINTIFFS' MEMORANDUM IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT</u>**

## I. INTRODUCTION

This case is about a funeral home that faced a public lawsuit seeking to stop its operations before it received the information on which the lawsuit was based. Plaintiffs Gerald Johnson ("Johnson") and Serenity Memorial Funeral and Cremation Service, LLC ("Serenity") (collectively, "Plaintiffs") contend that Defendant Patty Faenger ("Faenger"), Executive Director of Missouri's State Board of Embalmers and Funeral Directors (the "Board"), helped set that lawsuit in motion while withholding the reports and denying them a meaningful chance to respond to the Board. They seek to hold her responsible for the resulting harm.

The sequence is straightforward. Faenger personally decided not to send Johnson the report or findings from the Board's inspections of Serenity in March and April 2023 inspection (despite the Board's unanimous vote to do so), referred the matter for further investigation and review without first seeking Johnson's explanation, and assembled the materials the Board used to authorize a lawsuit for immediate cessation of operations. The injunction was Serenity's first notice of the March and April allegations. Johnson then sought meetings with the Board, submitted

information about corrections, and asked the Board to consider alternatives; his requests were primarily either ignored or denied.

At the injunction hearing, the circuit court denied the Board's request for emergency relief. It found no evidence of untimely or improper embalming and rejected key claims of "serious danger" involving refrigeration and improper storage of bodies. Although some recordkeeping and equipment allegations had evidentiary support, the Board did not establish the "serious danger" required for the relief the court considered. The Board later dismissed the lawsuit without prejudice. Faenger testified that it voted not to pursue the matter further through the courts and instead chose the Administrative Hearing Commission ("AHC") process. Meanwhile, Johnson experienced customer transfers and staff furloughs, and lost referral sources and business relationships after the publicity.

The arguments below explain why Plaintiffs contend this record warrants judgment. First, Faenger's admissions and the Board members' testimony connect her own decisions to the enforcement action. Second, the due process arguments under Counts I and II explain why timely notice and a chance to respond mattered to Plaintiffs' licensed livelihood. Third, the evidence of incomplete inquiry, withheld notice, the denial of emergency relief, and the later decision to stop pursuing the court case supports the malicious prosecution claim. Fourth, Defendant's failure to file an answer or affirmative defenses to these claims supports treating unanswered factual allegations as admitted and excluding affirmative defenses that were not fairly preserved.

Plaintiffs therefore ask the Court to decide Counts I, II, and III in their favor where the undisputed evidence establishes each required element, and to exclude forfeited affirmative defenses. If a protected deprivation, intent, causation, or another liability issue requires trial, the Court should still grant the narrower relief requested: establish the undisputed events under Rule

56(g) and leave only genuinely disputed issues for trial. Plaintiffs seek a liability determination on Counts I, II and III; only the amounts of damages are reserved for later determination.

## II. ARGUMENT

### A. Summary Judgment Standards

Summary judgment is only appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party has the burden to establish both the absence of a genuine issue of material fact and that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Enterprise Bank v. Magna Bank*, 92 F.3d 743, 747 (8th Cir. 1996). Once the moving party has met this burden, the nonmoving party may not rest on the allegations in his pleadings but by affidavit or other evidence must set forth specific facts showing that a genuine issue of material fact exists. Fed. R. Civ. P. 56(e); *Anderson*, 477 U.S. at 256; *Littrell*, 459 F.3d at 921. If the movant does so, then the burden shifts to the nonmovant to submit evidentiary materials that "designate specific facts showing that there is a genuine issue for trial." *Celotex Corp.,* at 324. An issue of fact is genuine, making summary judgment inappropriate, when "a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

### B. Plaintiffs Have Met the Requisite Elements for Their Claims of Denial of Due Process. (Counts I and II)

"Procedural due process claims consist of two elements: (1) the existence of a liberty or property interest entitled to due process protection, and (2) deprivation of that interest without sufficient notice and opportunity to present objections." *Wright v. Family Support Div. of Mo. Dept. of Social Svcs.*, 458 F.Supp.3d 1098, 1111 (E.D. Mo. 2020). "Generally, where deprivations

of property are authorized by an established state procedure, due process is held to require pre-deprivation notice and hearing in order to serve as a check on the possibility that a wrongful deprivation would occur." *Id.* at 1112 (citing *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976).

***1. Existing licenses receive constitutional protection.***

Plaintiffs' due process claims concern a licensed livelihood and a meaningful chance to respond. *Bell v. Burson*, 402 U.S. 535, 542 (1971) stands for the proposition that a state-issued license essential to a livelihood cannot be taken away without the process the Constitution requires. In *Cleveland Bd. of Educ. v. Loudermill*, the U.S. Supreme Court explained that a meaningful chance to respond can be a simple "initial check against mistaken decisions"; a full trial-type hearing is not always necessary. 470 U.S. 532, 545 (1985). Johnson's ownership, role as funeral director in charge, and professional licenses, together with Serenity's identified establishment functions, support the existence of interests in the licensed operation. SUMF ¶¶ 1–4.

***2. The record demonstrates that Faenger's withholding of the inspection findings was an intentional and personal decision.***

Regarding the second element of Plaintiff's due process claim, Faenger's own admissions establish her role in the intentional denial of notice and opportunity to Plaintiffs. Faenger testified that she could direct staff to send inspection findings and could request more investigative work. SUMF ¶ 8. She also acknowledged that the usual practice was to send findings to licensees and request correction. SUMF ¶¶ 9, 13. Yet she personally decided not to send Serenity the March or April 2023 inspection findings letter, despite the Board unanimously voting for her to do so. SUMF ¶¶ 36, 51. Additionally, before Faenger requested that the Central Investigations Unit ("CIU") conduct a follow-up inspection of Serenity on April 20, 2023, she neither notified Johnson nor interviewed him or Serenity's employees about the allegations. SUMF ¶¶ 23. Nothing prevented Faenger from providing notice and opportunity to Johnson; the March 14 inspection of Serenity

preceded Faenger's subsequent CIU referral by nearly five weeks. SUMF ¶¶ 19–23, 52. Even after the injunction filing, Johnson offered several meeting formats, submitted corrections, and sought to meet with the Board, but his requests were largely ignored or denied. SUMF ¶¶ 70–86.

***3. The record demonstrates that the Board relied on the materials Faenger supplied.***

There are several key facts that connect Faenger personally to the challenged information and notice decisions. Notably, Faenger called a closed session Board meeting, placed Serenity on the agenda, drafted the summary, and assembled inspection reports, and photographs while knowing the March and April inspection reports and findings had not been provided to Johnson. SUMF ¶¶ 30 – 35. During the Board's review and deliberation process, Faenger was the source of information on which the members relied. Board vice chair Christopher Howard directed his questions about Serenity to Faenger and assumed her summary was complete. SUMF ¶¶ 43, 44. Board member Scott Meierhoffer relied on the supplied facts without independently verifying the allegations. SUMF ¶ 46. Board chair Howe assumed accuracy of Faenger's summary but could not address completeness. SUMF ¶ 47. These facts connect Faenger's conduct to the Board's unanimous authorization of the injunction petition. SUMF ¶¶ 48–49. The Board's vote and counsel's role do not erase Faenger's actions, and its causal significance cannot be presumed away.

***4. The record shows why an early response could have mattered.***

Under *Mathews v. Eldridge*, 424 U.S. 319, 321 (1976), the U. S. Supreme Court weighed the private interest, the risk of error and value of added safeguards, and the government's interest and burden. Here, all three factors favor Plaintiffs' proposed modest safeguard. Johnson's livelihood interest was substantial; the Board relied on materials Johnson had not seen; and Faenger's sending of the inspection reports and receiving an explanation was feasible and required.

SUMF ¶¶ 35, 39–47, 51–52. The court's treatment of embalmed remains, cooler capacity, and the van illustrates the practical value of hearing the explanation before acting.

In *Keating v. Nebraska Public Power Dist.*, the Eight Circuit Court of Appeals makes the timing point directly: where pre-deprivation process is required and practicable, a later remedy does not alone excuse its absence. 562 F.3d 923, 929 (8th Cir. 2009) (citing *Westborough Mall, Inc. v. City of Cape Girardeau*, 794 F.2d 330, 337 (8th Cir.1986). *Keating* also requires an actual property deprivation and consideration of any emergency exception. Here, Faenger had weeks between the first inspection of Serenity on March 14, 2023, and the filing of the injunction on May 22, 2023, and Johnson offered several ways to meet. SUMF ¶¶ 19–24, 70–85. Plaintiffs submit that the "serious danger" label should be tested against that sequence and the evidence.

Faenger admits that she gave Serenity no March or April inspection reports or deficiency notices, no correction deadline, and no pre-filing opportunity to respond to the Board. SUMF ¶¶ 39, 41, 51, 58. Johnson learned of the action from a reporter and received the reports through counsel after filing. SUMF ¶ 57. The March and April inspection materials were transmitted to Johnson on May 24 and the May inspection materials on June 5—*after* the filing of the May 22 injunction. SUMF ¶¶ 69, 83. Johnson repeatedly and unsuccessfully requested to meet with the Board, and at least one Board member admitted that Faenger did not inform him of these multiple requests. SUMF ¶¶ 70–86. Johnson's brief post-filing meeting with Faenger and counsel was not an appearance before the Board. SUMF ¶ 72.

The circuit court also found that the initial petition was Serenity's first notice of the March and April allegations and that repairs and changes to identification and recordkeeping followed notice. SUMF ¶¶ 56, 100. To be clear, the order did not declare every condition at Serenity satisfactory: it found evidence of identification and cremation-record problems and clogged sinks.

SUMF ¶¶ 96–98. But it found no evidence that the recordkeeping problems presented the asserted "serious danger," no credible evidence of public danger from dripping fluids, and no public access to the stained areas. SUMF ¶¶ 97, 99. The circuit court aptly denied the consolidated motion. SUMF ¶¶ 88, 101.

The case transfers, furloughs, stopped referrals, and changed cremation arrangements Serenity experienced provide concrete evidence of injury. SUMF ¶¶ 109, 113–118. The circuit court's ruling and Serenity's later corrections support Plaintiffs' assertion that a timely response from Faenger could have mattered. SUMF ¶¶ 75–76, 89–100. The causal question is not only whether negative publicity harmed Serenity, but whether loss resulting from an unconstitutional denial of process may have been prevented had Faenger followed the same notice-and-opportunity procedures afforded to other licensees prior to the Board vote authorizing injunctive relief.

Accordingly, no genuine issue of material fact exists, and Plaintiffs are entitled to summary judgment in its favor on its denial of due process claim.

### C. Plaintiffs Have Met the Requisite Elements for Their Claim of Malicious Prosecution. (Count III)

To prevail on a claim of malicious prosecution, Plaintiff must prove:

> (1) the commencement or prosecution of the proceedings against the present plaintiff; (2) its legal causation or instigation by the present defendant; (3) its termination in favor of the present plaintiff; (4) the absence of probable cause for such proceeding; (5) the presence of malice therein; and (6) damage by reason thereof."

*Impey v. Clithero*, 553 S.W.3d 344, 352 (Mo. Ct. App. 2018).

#### *1. A dismissal without prejudice can be a favorable termination.*

The Board filed the Cole County action on May 22, 2023, amended its petition on June 5, 2023 lost its request for temporary and preliminary relief on June 21, 2023, and dismissed its petition without prejudice on September 16, 2024. SUMF ¶¶ 55, 81, 87–88, 102. Faenger supplied

additional evidence of abandonment: asked the reason for dismissal, she recalled the adverse ruling and the Board's vote not to pursue the matter further through the courts, instead pursuing the AHC. She also described the Board's review of the findings and discussion of its options with counsel. SUMF ¶¶ 106–107.

In *McFarland v. Union Finance Co.*, the court upheld a finding of favorable termination where a civil claimant dismissed a claim without prejudice and the circumstances showed abandonment of the claim. 471 S.W.2d 497, 499 (Mo. Ct. App. 1971). In *Zahorsky v. Barr, Glynn & Morris, P.C.*, 693 S.W.2d 839, 844 (Mo. Ct. App. 1985), the court makes abandonment—not the dismissal label alone—the key inquiry. Here, Faenger's testimony strengthens Plaintiffs' position because it describes an affirmative decision to stop pursuing judicial relief, not merely a docket entry. SUMF ¶¶ 102, 106–107.

***2. Faenger's role was more than that of a passive observer.***

Faenger initiated the referral, controlled the notice decision, prepared the Board presentation, and answered Board members' questions. SUMF ¶¶ 20–23, 31–35, 43–49. Plaintiffs contend that these actions set the enforcement action in motion. *Diehl v. Fred Weber, Inc.*, 309 S.W.3d 309, 319-20 (Mo. Ct. App. 2010) stands, in part, for the proposition that delegating litigation details to counsel does not eliminate factual questions about the client's instigation of the suit. Faenger also acknowledged that she could express an opinion about delaying, narrowing, correcting, or dismissing a court action, although the decision belonged to the Board and such recommendations ordinarily came from counsel. SUMF ¶ 103. While Faenger's capacity to speak may not provide clear-cut proof that she controlled the litigation, it does show why her own conduct must be examined rather than disregarded because simply Board counsel filed the papers.

***3. Probable cause turns on reasonable inquiry before suit—not hindsight.***

As it related to the probable cause standard of a malicious prosecution claim, *Haswell v. Liberty Mutual Ins. Co*., 557 S.W.2d 628, 634 (Mo. banc 1977), supplies the governing rule: a claimant must reasonably believe both the underlying facts and the legal validity of the claim. "The rule is that the defendant in a malicious prosecution action is to be held responsible, not only for the facts he knew when he caused the suit to be instituted but also for all other facts pertinent to the suit which he could have ascertained by due diligence prior to causing the law to be put in motion." *Id*. In *Haswell*, the court treated the failure to interview the target or investigate available contrary facts as relevant to probable cause. Plaintiffs therefore need not accept a claim of reasonable belief based only on the information Faenger chose to collect.

The missing inquiry was practical and available: provide the reports and ask Johnson about the observations before presenting an emergency closure request. Faenger did neither before referral, although nothing prevented providing the inspection reports to Serenity. SUMF ¶¶ 22–24, 52. Faenger's May 22 firsthand observations and the May report did not exist when the original filing decision was made. SUMF ¶¶ 65–68. Furthermore, her lack of a written risk assessment, testing, specialist consultation, or known hospitalization further supports the challenge to urgency. SUMF ¶¶ 59–64. (To be clear, however, Plaintiffs do not contend that a particular test was a statutory prerequisite.)

The court's denial order corroborates further investigative gaps. The investigator could identify no non-embalmed bodies outside the cooler, did not check embalming status, observed the van for about ten minutes, and did not contact a hospital or morgue to establish death dates or times. SUMF ¶¶ 90, 92–94. The court rejected the asserted embalming, cooler, and van dangers. SUMF ¶¶ 89, 91, 95. Unlike *Impey*, where an injunction granted after a contested hearing

supported probable cause, the requested relief here was denied. Faenger further testified that she did not recommend dismissal or narrowing after the hearing and did not believe the filing was amended to account for the identified hearing concessions. SUMF ¶¶ 104–105.

Plaintiffs also address the whole proceeding. The ruling in *Joseph H. Held & Associates, Inc. v. Wolff*, 39 S.W.3d 59, 63 (Mo. Ct. App. 2001), requires lack of probable cause for the underlying proceeding, not merely one failed theory. Plaintiffs submit that the Court should assess whether the petition for an injunction, viewed as a whole and against the facts reasonably available at filing, had reasonable support.

***4. Civil liability does not require proof of personal spite.***

As held in *Proctor v. Stevens Employment Svcs, Inc.*, for civil compensatory liability, intentionally doing a wrongful act without just cause or excuse satisfies malice. 712 S.W.2d 684, 687 (Mo. banc 1986). Plaintiffs therefore need not prove personal hatred to establish Count III. Their evidence is Faenger's deliberate withholding decision, her departure from the Board's unanimous directive and ordinary notice practice, lack of a correction opportunity, and pursuit of closure before hearing Plaintiffs' response. SUMF ¶¶ 20–23, 39–41, 51–54, 58. *Haswell* permits malice to be inferred from lack of probable cause in a civil case.

***5. The evidence identifies actual business injury.***

The injury evidence concerns Serenity's lost business relationships and operational disruption, not reputation in the abstract. Johnson described immediate family transfers and staff furloughs; Witnesses Ronda Walker and Pastor Norman Owens identified referrals they stopped after the publicity; witness Darries Rainey described obtaining alternative cremation providers after loss of Serenity's Memorial Park relationship. SUMF ¶¶ 109, 113–118. Faenger acknowledged the importance of trust and the public's likely difficulty with mishandled-body and

biohazard allegations. SUMF ¶ 110. She also testified that a reporter contacted the Board and was directed to public filings, without identifying who directed the reporter. SUMF ¶ 111. These facts support foreseeability and an injury nexus. *Haswell* recognizes reasonable underlying defense fees as recoverable damages. Plaintiffs reserve amounts, reasonableness, causation, and allocation between Plaintiffs; no confidential expert financial calculations are necessary to the limited injury argument presented here.

In summary, Plaintiffs have presented sufficient evidence to establish a claim of malicious prosecution As no genuine issue of material facts exists for this claim, summary judgment on this claim in favor of Plaintiffs is warranted.

**D. Defendant's Failure to Answer Has Consequences**

Defendant never filed an answer or affirmative defenses to Plaintiffs' claims. Rule 8(b)(6) generally treats an allegation requiring a response as admitted when it is not denied, except an allegation about the amount of damages. Plaintiffs request application of that rule to concrete factual allegations, together with the independent deposition and documentary evidence. The specific factual allegations include, without limitation, withholding the reports despite requests (Compl. ¶¶ 23–24, 39(b), (e)); lack of an opportunity to correct before filing (¶ 39(f)); Faenger's lack of firsthand knowledge of the March and April conditions (¶ 39(g)); the filing before Faenger's firsthand May 22 observations (¶¶ 31, 33, 66); and the subsequent court dismissal (¶ 43). Compare SUMF ¶¶ 20–24, 28, 39, 55–58, 65–69, 83, 102. Damages amounts and ultimate legal liability remain for proof and decision.

At minimum, the court should establish the undisputed material facts. Rule 56(g) provides useful relief even if ultimate liability remains for trial. Plaintiffs request establishment that Faenger personally decided not to send the March findings letter; gave no notice and conducted no

interview of Johnson or Serenity employees before the April 20 referral; provided no March or April deficiency notice or correction deadline before suit; and assembled Board materials before the reports were provided to Johnson. SUMF ¶¶ 20–23, 31–35, 39, 51, 58.

Plaintiffs also request establishment of the May 24, 2023 and June 5, 2023 inspection report transmission dates; Johnson's numerous Board meeting requests that were ignored or denied; and the filing, hearing, denial, and dismissal dates of the injunction against Serenity. SUMF ¶¶ 55, 69, 79–85, 87–88, 102. Faenger's account of the Board's decision not to pursue further court relief supplies additional evidence of the dismissal circumstances. SUMF ¶¶ 106–107.

## III. CONCLUSION

For these reasons, Plaintiffs request summary judgment on Counts I, II, and III to the extent the admitted facts and supporting evidence establish the required elements. Alternatively, Plaintiffs request exclusion of unpreserved affirmative defenses and an order under Rule 56(g) establishing the material facts identified by Plaintiffs. The amounts of compensatory and punitive damages are reserved for later determination; this reservation does not defer proof of any element necessary to establish liability or resolve entitlement to punitive damages. Any liability issue the Court finds genuinely disputed remains for trial.

Date: November 16, 2026

Respectfully submitted,

By: */s/ L. Michelle Lewis*
L. Michelle Lewis, #74335
Siwel Law LLC
P.O. Box 23042
Belleville, Illinois 62223
(730) 274-0136 – Telephone
lmlewis@siwellaw.com

Steven V. Hunter (Pro Hac Vice)
Quarles & Brady LLP
300 North LaSalle Street, Suite 4000
Chicago, IL 60654
(312) 715-5087 – Telephone
(312) 715-5155 – Facsimile
Steven.Hunter@quarles.com

ATTORNEY FOR PLAINTIFFS

**CERTIFICATE OF SERVICE**

I hereby certify that on November 16, 2026, the foregoing was filed electronically with the Clerk of Court through the Court's CM/ECF system, which sent notice to all counsel of record.

*/s/ L. Michelle Lewis*
ATTORNEY FOR PLAINTIFFS