Ex. A-13



A. Yes.
Q. Did you conduct a written risk assessment before filing the injunction?
A. No, I did not conduct -- did not file or create a document called a risk assessment. Again, I just put together the facts and the findings and the observations.
Q. And the summary?
A. Yes.
Q. Okay. Do you use a metric or a policy or, like, a checklist to -- to define what constituted emergency criteria?
A. No.
Q. Did you consult with a physician or a toxicologist or epidemiologist or other professional, public health officer, infectious disease expert?
A. Yeah, I did not consult with anyone.
Q. Did you take samples of any liquid?
A. No.
Q. Did you test any air quality or ventilation?
A. No.
Q. Did you document any illness, exposure, injury, public health incident caused by the alleged

conditions?

A. Did we document any exposure, illness -- I think the only thing I can say, that the observations indicated that bodily fluids were all over the cooler floor and just being walked through and walked through the rest of the building and without protection, and glove usage was not available for the employees, not that we witnessed. So if you ask what we documented, I mean, those are some documentations that I recall.

Q. Okay. Thank you. Was any individual hospitalized, treated or diagnosed because of Serenity's condition?

A. I am unaware of that.

Q. Did any governmental health agency issue a citation or closure recommendation?

A. Unaware of that.

Q. Did you -- did you quantify the probability or severity when you talked about the exposure? Did you quantify that exposure in terms of severity or duration or immediacy?

A. No. Just reported observations.

Q. So your substantial probability conclusions were not based on documented scientific assessment. Correct?