Ex. A-15



Q. So the injunction sought to stop Serenity from operating. Correct?
A. Yes.
Q. Before the filing of the injunction, Serenity had not been precisely told -- I'm not talking about the laws -- Serenity had not been precisely told what it needed to correct from the March and April inspections. Correct?
A. No written notice was provided to him, correct.
Q. Before the filing of the injunction, Serenity had not been given a deadline in which to correct any of the alleged deficiencies from those March and April inspections. Correct?
A. Yes.
Q. For that injunction filing, Serenity had not been invited to submit a written response to the board. Correct?
A. Correct.
Q. Before that injunction filing, Serenity had not received a hearing before the board or Administrative Hearing Commission. Correct?
A. That's correct.
Q. Okay. And I'm going back to our Exhibit Number 1, RFA Number 31, the last one. It's not the

last one, but Number 31. You stated that the March and April materials were emailed to Serenity on May 24th. Correct?
A. Yes.
Q. And you stated that the May report was sent on June 5th. Correct?
A. Yes. That would -- yes.
Q. Okay. So the May inspection report did not exist at the time of the initial injunction filing. Correct?
A. Yes, correct.
Q. Okay. So that was the report that was subsequently sent to Mr. Johnson's counsel at the time on June 5th. You characterized the delivery of the report as a courtesy. Those, of course, contained evidence used to support your closure -- the board's closure litigation. Correct?
A. I'm sorry. The board's closure litigation?
Q. Well, injunction filing.
A. Okay, yes, closure. I'm sorry. What was the first part of the question? I'm sorry.
Q. I said so you -- you characterized delivery of the reports as a courtesy?
A. Uh-huh.