same day notice for Mr. Johnson to appear before the board to discuss Serenity, prior to voting for an injunction?

**A. I -- no, I mean, he -- they -- we -- we -- we could have no. I mean he could -- he could have come any time he wanted at a board meeting.**

Q. And was Mr. -- is that common knowledge? Does -- was Mr. Johnson told that he can come to a board -- before the board at any time to present or to discuss his -- his establishment?

**A. I have no idea if -- if -- if he was informed of that or not, but like I explained to you before, each board meeting starts with a public matters, and we discuss the public. People are there. They ask questions and stuff like that. All -- all anybody has to do is show up, and if they have an issue, we would work with them and meet with them if we needed to. So as far as your question goes, no, I don't have any idea if he was, you know, told he could do that or not. So.**

Q. To the best of your knowledge, since -- since your tenure on the board, Mr. -- Mr. Howard, has there been any other licensee, during -- for which there was an immediate move to an injunction, without hearing from that licensee?

**A. No, because you -- usually the licensee that -- that's in question will -- will -- will schedule a meeting during -- during our regular board meetings to actually either be there in person or via phone.**

Q. So the licensee will -- will know that their matter is gone

-- is going before the board, and that they should show up for that board meeting to discuss it. Is that how that works?

**A. Most of the licensees that -- that know that there are complaints against them and everything else, contacts the board and wants -- wants to be given a chance for -- for us to hear their reasoning or their -- their issues. We had a gentleman that was in Kansas City, that him and -- him and his lawyer were actually -- we -- we -- we were on the phone -- phone with him for over two hours during a board meeting for -- for him to tell his side of the story. So I guess my whole thing in a nutshell is that, if Mr. Johnson would -- would have -- and apparently from those e-mails, he had numerous -- I mean, apparently he had conversed with them. He should have come before the board and just said, hey, this is what what's going on. Him and his lawyer, whoever wanted to come. So, I -- like I said, it's kind of -- I mean, every -- every -- all -- all of the other people have -- have either called in or are -- they -- they give a -- or they send a -- a big statement of stuff to us relating to why that it shouldn't happen, or this should happen, or anything else.**

Q. So, how do those other licensees know to either call in or give a written statement?

**A. Okay. Well, usually, when -- when you have a complaint against you, the state board actually contacts you, and -- and I can tell you in -- if that -- if something ever come up with me**

and they said, hey, this is, you know what's going on, I -- I -- I would appear before the state board for them to know my side of the story, my -- my case, and every -- everything else. Now, there's some people that -- that don't handle business that way. But to your question, I guess that -- that they would not know if -- if they could come before the board.

Q. Unless they're told that?

A. Yes.

Q. So now we're at the May 17th, 2023 meeting. A formal motion has been placed on the floor to file an injunction against Serenity. According to the meeting minutes, the motion was second -- made by Scott Meyerhoffer, and it was seconded by you; correct?

A. Mm-hm.

Q. And you've already established -- you explained the reasons why you felt the need to second the motion?

A. Mm-hm.

Q. Was the vote unanimous?

A. Yes, as far as I -- I can remember. Yes, ma'am.

Q. Okay. Did anyone propose anything shy -- something shy of an injunction?

A. No.

Q. Did anyone -- I know you said questions were posed to Patty. Did anyone ask to hear from Serenity?

A. No.